IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CRAIG YOW and PATRICIA YOW,**

    **Plaintiffs,**

**v.**

**COTTRELL, INC.,**

    **Defendant.**                                   **Case No. 3:04-cv-888-DRH**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

On September 25, 2006, the Court issued an Order (Doc. 65) in this case, denying defendant Cottrell, Inc.'s Motion for Summary Judgment (Doc. 17).[1] On October 10, 2006, Defendant filed a Motion for Reconsideration of September 25, 2006 Order or in the Alternative Motion for Leave of Court to Submit Amended Summary Judgment Motion and Request for Oral Argument (Doc. 67). Plaintiffs Craig Yow and Patricia Yow filed a Response in Opposition (Doc. 71), to which Defendant has replied (Doc. 72). In addition, Plaintiffs have filed two Supplements to their Response (Docs. 82 & 87); Defendant has responded to the initial Supplement (Doc. 83).

---

[1] This Order also granted in part and denied in part Plaintiffs' Motion to Strike Defendant's Motion for Summary Judgment (Doc. 23) and granted Plaintiff's Motion to Supplement Response to Motion for Summary Judgment (Doc. 39).

Specifically, Defendant requests the Court to reconsider its prior Order concerning two issues: (1) whether Gary Page's errata sheet is admissible and (2) whether certain portions of Elwood Feldman's affidavit can be considered lay witness testimony rather than expert testimony (Doc. 67). In its September 25, 2006 Order, the Court refused to permit reference to the substance of the Page errata sheet and also refused to consider it as evidentiary support for Defendant's summary judgment motion (Doc. 65, p. 10). Further, the Court declined to consider anything amounting to opinion testimony in the Feldman affidavit when ruling on Defendant's summary judgment motion, as Defendant had not disclosed Feldman as an expert witness (*Id.* at 6). Instead, the Court only considered argument and/or testimony regarding Mr. Feldman's personal and factual observations, but would not consider Mr. Feldman's opinions drawn from those observations (*Id.*). Regarding Defendant's Rule 59(e) Motion, if the Court does not find the Page errata sheet admissible, Defendant alternatively seeks leave of Court to file an amended summary judgment motion (Doc. 67, p. 7). Defendant states that the amended motion would include an affidavit from Mr. Page, which it believes will supply sufficient evidence to allow the Court to grant summary judgment in its favor.

Plaintiffs vehemently oppose Defendant's assertions, arguing that Defendant has failed to advance any legal grounds warranting the Court's reconsideration of its prior Order (Doc. 71). Additionally, Plaintiffs argue that allowing Defendant to file an amended summary judgment motion at this late stage would be tantamount to modifying the scheduling order (as the deadline for filing

dispositive motions was December 2005), for which Defendant has failed to show good cause (*Id*. at 3-5), and such filing would be untimely and unfairly prejudicial (*Id*. at 9-10).

Defendant requests oral argument on its Rule 59(e) Motion, yet the Court finds the issues can be resolved solely by way of the parties' briefs, and thus, declines to set the matter for hearing. Per the discussion below, Defendant's Motion is granted in part and denied in part.

## II.  DISCUSSION

### A.  Legal Standard

Defendant makes its timely Motion to Reconsider pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 59(e)**. ***See* FED. R. CIV. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment")**. A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." ***LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)(citing *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986))**. To support a motion for reconsideration based on newly discovered evidence, the moving party must show it did not know and reasonably could not have discovered with reasonable diligence the evidence proffered in the motion for reconsideration until after judgment was rendered. ***Caisse Nationale de Credit v. CBI Industries*, 90 F.3d 1264,1269 (7th Cir. 1996)**. Therefore, a motion made pursuant to Rule 59(e) cannot be used

as "a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." **Moro v. Shell Oil Co., 91 F.3d 872, 875 (7th Cir. 1996)**.

Determining whether to grant a Rule 59(e) motion is at a district court's discretion. **See Pickett v. Prince, 207 F.3d 402, 407 (7th Cir. 2000)(stating "[A] motion to reconsider a ruling is constrained only by the doctrine of the law of the case. And that doctrine is highly flexible, especially when a judge is being asked to reconsider his own ruling.")(citations omitted)**. "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." **Russell v. Delco Remy Div. of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995) (citation omitted)**. The function of a motion to reconsider a judgment is not to serve as a vehicle to re-litigate old matters or present the case under a new legal theory. **Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 529 (7th Cir. 2000)(citing Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996))**. Moreover, the purpose of such a motion "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." **Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.), 125 B.R. 963, 977 (N.D. Ill.1990) (citing F.D.I.C. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986)(other citations omitted))**. As one court

plainly put it: "A Rule 59(e) motion is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." **Id.**

**B.     Analysis**

This is a personal injury case for a lower back injury plaintiff Craig Yow allegedly suffered while working as a truck driver for Jack Cooper Transport ("JCT"). On the day of his injury, Yow was operating a car hauling rig, which employs a manual rear skid loading system. After unloading the cars, Yow was pushing the left rear skid back into its housing assembly when it allegedly locked up, causing him to injure his lower back. Defendant is the manufacturer of the car hauling rig operated by Yow the day of his injury. Plaintiffs have sued Defendant based on theories of product liability and negligence regarding the rear skid loading system.

**1.    The Page Errata Sheet**

As explained in the Court's previous September 25, 2006 Order (Doc. 65), Plaintiffs originally commenced this action as an Illinois Supreme Court Rule 224 proceeding directed towards Yow's employer, JCT (Doc. 23, p. 8, Ex. G). JCT thereby designated Gary Page to serve as its corporate representative for deposition. Plaintiffs deposed Page on May 3, 2004 (Doc. 23, p. 8, Ex. I). In its prior Order, the Court noted that during his deposition, Page testified that rear skids of the rig were not modified or replaced prior to Yow's injury. Page further testified that if the skids

were, in fact, replaced, they would have been replaced with Cottrell skids (as opposed to another manufacturer's skids) (Doc. 65, pp. 7-8).

In support of one of its product modification grounds argued in its summary judgment motion, Defendant offered Page's errata sheet. Page submitted his errata sheet, attempting to alter portions of his deposition testimony to instead indicate that Defendant had previously replaced the skids of the rig driven by Yow on the day of the accident. Further, Page sought to alter his deposition testimony to indicate that the replacement skids were made not by Cottrell, but by a third-party manufacturer, C.F. Bender. Plaintiffs moved to strike Defendant's use of information contained in the Page errata sheet to support its summary judgment motion. The Court granted Plaintiffs' request, finding it would be improper under the law to consider the contents of an errata sheet that sought to change the substance of one's deposition testimony (Doc. 65, pp. 9-10, citing **Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 388 (7th Cir. 2000)**).

Defendant now moves for reconsideration of the same, asserting that the Page errata sheet does not contradict his deposition testimony regarding whether the skids were replaced (Doc. 67, p. 3). Defendant further asserts that the Page errata sheet should be treated as a post-judgment affidavit, serving to present newly-discovered evidence to clarify ambiguities (*Id.*). To provide proper context for its arguments, Defendant has attached the entire deposition transcript to its Motion as Exhibit A.

Considering the entire transcript, the Court does not agree with

Defendant's assertion that the Page errata sheet does not contradict Page's deposition testimony. Although, as Defendant points out, Page testified that he did not review the "GRO" (garage repair order) for information regarding whether the skids were replaced on the rig driven by Yow, he continued to testify as follows:

> Q: Is there anything in the records or the corporate knowledge of Jack Cooper Transport Company to indicate the rear loading skids on trailer number 7850 were modified in a fashion other than when it was originally manufactured up through the time of Mr. Yow's injury on 2/14/03?
>
> A: No, sir.
>
> Q: Okay. So any maintenance work would have been merely to put the trailer back in the same condition as it was when it arrived new, correct?
>
> A: Yes, sir. Absolutely.

(Doc. 67, Ex. A - Page deposition, 13:16 - 14:1).

> Q: Do you have any knowledge, Mr. Page, that the rear loading skids on trailer number 7850 or the rear loading skids on trailer number 7910 were modified in any fashion by any person or any company prior to those injury dates I described above to indicate the skids were modified differently other than as originally manufactured by Cottrell?[2]
>
> A: No, sir. I do not.

(*Id*. at 15:18-25).

> Q: Are there any records that indicate whether or not these

---

[2] The car hauling rig driven by Yow on the day of the alleged accident was "trailer number 7850," while a car hauling rig driven by another JCT employee, the subject matter of a separate suit, was "trailer number 7910." Because the two personal injury actions were originally filed as a single suit, questioning concerning both rigs occurred during Page's deposition.

>skids in this case were actually replaced before the accidents?
>
>A:   I am not aware of that. I cannot, you know, deny or confirm it. But, you know, there's – if we replace the skids on any of our equipment, we replace them with the original equipment skids.
>
>Q:   So if there is a replacement of a skid due to damage beyond repair, a Cottrell original equipment skid is used as a replacement?
>
>A:   Yes.

(*Id.* at 17:1-11).

While the passages from his deposition show that Page unequivocally testified that the skids were not replaced and that even if they had been, replacement skids manufactured by Cottrell would have been used, the Page errata sheet states the opposite. The Court finds no ambiguity in his testimony. Page's errata sheet seeks to alter the substance of his deposition testimony to indicate that he had not had a chance to review all of the pertinent maintenance records for Yow's rig, but having now done so, he states that the records indicate both skids on the rig were replaced with skids manufactured by C.F. Bender.[3] Page also states that contrary to his testimony, now he is aware that sometimes JCT's Wentzville, Missouri maintenance department replaces damaged Cottrell skids with skids from other manufacturers (*see* Doc. 67, Ex. B. - Page errata sheet). For the reason that the information offered by the Page errata sheet is clearly contradictory to his deposition

---

[3] The referenced maintenance records (or "GRO's") have again, not been attached to any of Defendant's exhibits and are thus, not part of the record.

testimony sought to be changed, it is inadmissible. **See Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 388 (7th Cir. 2000)("[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a not")**. The Court, therefore, remains unswayed by Defendant's Rule 59(e) Motion in this regard.

Possibly in anticipation of the Court's refusal to view the proposed changes as anything but contradictory, Defendant offers further legal argument to warrant reconsideration of the Page errata sheet. Defendant correctly asserts that the law allows consideration of the Page errata sheet, when construed as a "post-deposition affidavit," in a limited number of circumstances (Doc. 67, pp. 4-7). These "limited circumstances" are when a post-deposition affidavit (or errata sheet) contradicts prior deposition testimony in order to "clarify ambiguous or confusing deposition testimony," or when the subsequent conflicting information is "based on newly discovered evidence." **Adelman-Tremblay v. Jewel Companies, Inc., 859 F.2d 517, 520 (7th Cir. 1988)(citing Babrocky v. Jewel Food Co., 773 F.2d 857, 861 (7th Cir. 1985))**. **See also Bank of Illinois v. Allied Signal Safety Restraint Systems, 75 F.3d 1162, 1167 (7th Cir. 1996)(citing Adelman-Tremblay, 859 F.2d at 520); Deimer v. Cincinnati Sub-Zero Products, Inc., 990 F.2d 342, 346 n.3 (7th Cir. 1993)(citing Adelman-Tremblay, 859 F.2d at 520)**.

First, Defendant argues that the Page errata sheet was based on newly discovered evidence, namely, GRO's indicated that the rear loading skids *had* been replaced prior to Yow's injury and that these skids were not Cottrell skids, but instead, manufactured by C.F. Bender (Doc. 67, p. 5). Page apparently obtained this "newly discovered evidence" by "reviewing the records that he testified he had never reviewed" prior to the deposition (*Id*.). Second, Defendant believes that if nothing else, the Page errata sheet serves to clarify his ambiguous or confusing deposition testimony. In support, Defendant offers several cases it believes are analogous to the circumstances at hand. Yet, the Court remains unconvinced.

Page, as a JCT corporate representative, is now a non-party witness to this suit. Yet even statements made by witnesses that contradict prior deposition testimony are not allwoed. **Bank of Illinois, 75 F.3d at 1169**. To begin, Defendant misinterprets the meaning of "newly discovered evidence." In the **Rule 59(e)** context, evidence is only considered "newly discovered" if it could not have been diligently discovered prior to the rendered judgment. **Caisse Nationale de Credit, 90 F.3d at 1269**. Applying similar reasoning when analyzing the admissibility of contradictory post-deposition affidavits (or errata sheets), the Court finds nothing "new" about the evidence that the rear loading skids were replaced and the replacement skids were made by a third-party manufacturer. Simply because this information was "new" to Page, as he failed to apprise himself of this information until *after* he gave his deposition, does not qualify it as "newly discovered evidence"

for the purpose of admitting the Page errata sheet. It is clear that the records were available to Page prior to his deposition and that, if he had diligently reviewed the records when he should have, this would not be an issue today.[4] Moreover, Defendant offers no valid reason to explain why an exercise of due diligence would not have obviated the need for an errata sheet.

Page's deposition testimony, despite Defendant's assertions otherwise, provides certain and definite answers. Although Page did, at one point, state that he had not reviewed certain maintenance records, this did not prevent him from subsequently answering with blanket statements that the rig in question was not modified and that even if it was, the skids would be replaced with Cottrell skids. In fact, Page's testimony clearly shows that he gave answers which later turned out to be proven inaccurate by JCT's own maintenance records.

If the Seventh Circuit does not find contradictory affidavits or errata sheets admissible in order to create an issue of fact to *defeat* a summary judgment motion, the Court, in this case, can hardly admit one so that Defendant may attempt to *prevail* on its own summary judgment motion. Rather, the more appropriate way to deal with this discrepancy is through trial testimony, where Page can attempt to

---

[4] The transcript shows the records were available at the time of the deposition and that Page, as the corporate representative for JCT, testified that his answers were based on the records and knowledge of JCT (*see* Doc. 67, Ex. A - Page depo., 3:19 - 4:9; 10:8-14). If there were answers Page did not know at the time of the deposition, he should have stated as much and requested time to review the pertinent records. Yet, it seems he chose not to do so until afterwards.

explain why his deposition testimony was incorrect. ***See Thorn*, 207 F.3d at 389**.[5]

The Court's prior ruling regarding the inadmissibility of Page's errata sheet stands; Defendant has not met its Rule 59(e) burden to warrant reconsideration.

### 2. Leave to File Amended Motion for Summary Judgment

Alternatively, Defendant seeks leave to file an Amended Motion for Summary Judgment (Doc. 67, pp. 7-8), which would include an attached affidavit of Gary Page, complete with the referenced maintenance records as exhibits thereto (*see* Doc. 67, Ex. C - proposed Page affidavit). It is Defendant's belief that the proposed Page affidavit would supply the evidence necessary to eradicate Defendant's liability to Plaintiffs, based upon a theory of prior product modification. In support of its request, Defendant asserts that it would efficiently allow the Court to thereby grant summary judgment in its favor.

Plaintiffs, in their opposition, equate this request to one seeking a modification of the scheduling order, as the deadline for filing dispositive motions was December 19, 2005 (*see* Doc. 6). Under **FEDERAL RULE OF CIVIL PROCEDURE 16(b)**, a scheduling order may only be modified upon a showing of "good cause" and with leave to file the proposed motion granted by a district judge (or magistrate judge, if the local rules so provide). "Good cause" has no precise definition in this particular context, but it has been interpreted as requiring a party to show it could

---

[5] Plaintiffs, in their Response (Doc. 71, p. 9 n.2), request leave of Court to depose Gary Page should Cottrell be permitted to use his testimony at trial. The Court will not address the request here, but shall consider Plaintiffs' request if made in a separate motion.

not have reasonably met the original deadline despite diligent efforts. *See* **6A WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE § 1522.1 at 231**.

In this case, Defendant does not explain why the Page affidavit could not have been submitted as an exhibit to its original summary judgment motion. Obviously, Defendant assumed the Page errata sheet would be admissible evidence and the affidavit therefore unnecessary. When the Court granted Plaintiffs' Motion to Strike the Page errata sheet, Defendant was deprived of the evidentiary item necessary to demonstrate product modification. The Court is unwilling to entertain dispositive briefings once again because Defendant's evidentiary item was inadmissible. This reason does not meet the "good cause" standard to permit leave for Defendant to file an amended summary judgment motion. Further, although Defendant presents the tempting possibility of efficiently resolving this case if allowed to file its summary judgment motion, it is not that simple.

The Court, in its prior September 25, 2006 Order (Doc. 65), found that Defendant's product modification argument "*may* have been valid," but the missing evidence regarding whether the skids were replaced with a third-party manufacturer's skids prior to Yow's accident left an existing question of fact. However, this is not the only question of fact which appears to remain, as Plaintiffs argue. The Court finds there may be evidence that Defendant was previously aware the C.F. Bender skids were being used on Cottrell rigs (*see* Doc. 71, p. 12, referencing Doc. 22, pp. 6 & 12; Ex. W - Elwood Feldman deposition). In the event there is evidence of actual or constructive knowledge on Defendant's part, the

"reasonable foreseeability" theory (*see* Doc. 65, p. 22, n.6) may not suffice. Regardless of the correct answer, it is now one to be determined by a jury.

### 3. The Feldman Affidavit

In support of its Motion for Summary Judgment, Defendant submitted the affidavit of Elwood Feldman (Doc. 17, Ex. 5). Feldman has been employed by Defendant since 1978 and currently serves as Vice Chairman. In his affidavit, Feldman discussed details regarding his inspection of the rig (and trailer) driven by Yow, complete with photographs to illustrate his statements. Plaintiffs moved to strike the Feldman affidavit because it constituted expert testimony and Defendant had not disclosed Feldman as an expert witness (Doc. 23). In its September 25, 2006 Order, the Court found that paragraphs 8, 9(a) (bullet point 3), 9(c) (bullet point 2), 10, 11 and 12 of Elwood Feldman's affidavit constituted expert opinions as they were not based merely upon Feldman's personal and factual observations but instead relied upon his particular expertise in the car hauling industry (Doc. 65). Thus, the Court granted Plaintiffs' Motion to Strike in part regarding the Feldman affidavit. Defendant now additionally requests, pursuant to Rule 59(e), that this Court reconsider its prior Order and find the Feldman affidavit admissible in its entirety as it constitutes solely lay witness testimony. Plaintiffs oppose Defendant's reconsideration request and further ask that the Court strike additional portions of the Feldman affidavit: paragraphs 7 and 9(a) (bullet point 2).

Expounding on its original argument that the Feldman affidavit merely constitutes factual observations and not expert testimony, Defendant offers the

Eighth Circuit decision in **Long v. Cottrell, Inc., 265 F.3d 663 (8th Cir. 2001)**. In the **Long** case, the appellate court found the trial court did not abuse its discretion in allowing Feldman to testify as a fact witness, as the court determined his testimony was not expert in nature. **Id. at 668 (noting that Plaintiffs failed to object to Feldman's testimony during trial as improper opinion testimony)**. Feldman's testimony was found to be "expressly limited to his own knowledge and experience." **Id. at 669**.

Respectfully, an opinion from the Eighth Circuit does not constitute binding precedent upon this Court. Further, in reviewing the **Long** decision, the testimony given by Feldman did not reach as far into the realms of opinion testimony as the Feldman affidavit does in this case. In **Long**, Feldman gave testimony regarding Cottrell's efforts to design alternative rachet systems, what other manufacturers were doing in the industry and the proper protocol for rachet tie-down procedures. In his affidavit, Feldman opines about the resultant outcomes from modifying the rear loading skid system with a C.F. Bender skid. The Court will not stray from its earlier decision, finding that such testimony constitutes expert testimony and shall not be admissible for failure to disclose Feldman as an expert witness, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 26**. Defendant offers nothing further to support its argument aside from rehashing its previous legal arguments.

The Court will, however, reconsider its prior Order regarding Feldman's

affidavit, paragraph 9(a) (bullet point 2).[6]  Upon review, it appears this only conveys Feldman's factual observations regarding the directional movements of the skid wheels.  Therefore, the Court will vacate its prior Order with respect to paragraph 9(a) (bullet point 2) of the Feldman affidavit *only*, finding it constitutes factual observations and not expert testimony.  Lastly, the Court declines to strike the additional portions of the Feldman affidavit as requested by Plaintiffs.

### III.  CONCLUSION

Defendant's Motion for Reconsideration of September 25, 2006 Order or in the Alternative Motion for Leave of Court to Submit Amended Summary Judgment Motion and Request for Oral Argument (Doc. 67) is hereby **GRANTED IN PART AND DENIED IN PART**.  Defendant's Motion is denied as to all aspects except that the Court vacates its prior Order finding 9(a) (bullet point 2) of the Feldman affidavit inadmissible expert testimony; instead, the Court finds 9(a) (bullet point 2) of the Feldman affidavit to merely constitute fact testimony and thus, is admissible.

**IT IS SO ORDERED**.

Signed this 2nd day of August, 2007.

/s/       David    RHerndon
**United States District Judge**

---

[6] Paragraph 9(a) (bullet point 2) of the Feldman affidavit reads:

> Additionally, the C.F. Bender skid has two sets of plastic wheels instead of two stainless steel ball bearings on the Cottrell skids.  See Figure 6.  The wheels allow only bi-directional movement as opposed to unlimited movement like the Cottrell ball bearings.

(Doc. 17, Ex. 5 - Feldman aff., p. 3).