IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CRAIG YOW and PATRICIA YOW,**

    **Plaintiffs,**

v.

**COTTRELL, INC., et al.,**

    **Defendants.**                                     Case No. 04-cv-888-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

Before the Court is Defendant Cottrell, Inc.'s ("Cottrell") Motion to Bar Plaintiffs' expert Linda Weseman ("Weseman") from testifying in this case (Doc. 73). Based on facts gleaned from both parties' arguments and supporting exhibits, the Court denies the Motion.

Plaintiffs Craig Yow and Patricia Yow filed this products liability action against Cottrell, Inc., alleging that Mr. Yow, a driver employed by Cottrell, was injured while operating the manual rear loading skid system on the Cottrell car hauling rig. He seeks recovery based on theories of strict liability, negligence and breach of implied warranty of fitness. He also alleges that Cottrell knew of or consciously disregarded reports of similar injuries caused by manual rear skid

loading systems and on this basis, he seeks punitive damages. Mrs. Yow alleges loss of consortium.

The Yows retained Weseman as an expert witness. In this capacity, Weseman conducted a mechanical engineering analysis of Cottrell's rigs and offered her expert opinions regarding the causation of Mr. Yow's injuries (Doc. 73, Ex. D, pp. 4-5). Among other things, Weseman opines that the design of the rear skid loading systems on Cottrell's rigs is unreasonably dangerous and defective as they are predisposed to come to sudden stops in their housings when being maneuvered, causing a risk of injury to the operators. Weseman further opined that as the manufacturer of these rigs, Cottrell knew or should have known of the potential for inflicting injuries similar to those Mr. Yow sustained. Weseman also determined that safer, alternative hydraulic rear skid loading systems were feasible to employ on Cottrell's rigs and that this technology was available prior to the time Mr. Yow was injured.

On January 18, 2007, Cottrell filed a Motion to Bar Weseman from testifying in this matter (Doc. 73). The crux of Cottrell's argument in support of its Motion is that Weseman is unfit to testify because of her refusal to answer inquiries relevant to her conclusions and anticipated testimony. The pertinent facts in this regard are as follows:

1.      Weseman has, on several occasions, consulted with Boydstun Metal Works, Inc. ("Boydstun"), a competitor of Cottrell's, regarding safety and design issues on hauling devices. Weseman concedes this in her expert report, and

she even cites her conversations with Boydstun personnel and inspection of Boydstun trucks in her report's "Materials Reviewed" attachment.

2. Previously, in other similar cases involving Cottrell as a defendant, Weseman has refused to respond to several of Cottrell's inquiries regarding the substance of her advice to and professional dealings with Boydstun. The bases for Weseman's refusal are her confidentiality agreement with Boydstun signed April 23, 2005, and a Florida statute governing this relationship which provides that an engineer shall not commit professional misconduct, which includes "[r]evealing facts, data or information obtained in a professional capacity without the prior consent of the professional engineer's client or employer except as authorized or required by law." **FLA. ADMIN. CODE ANN. R. 61G15-19.001(6)(r) (2006)**. Boydstun has not authorized Weseman's disclosure in this matter.

3. On February 1, 2007, the Yows filed their response to Cottrell's Supplement to Motion to Bar Weseman's testimony (Doc. 75). The response included an affidavit and deposition testimony from Weseman elucidating her position (Doc. 75, Exs. B, I, J and K). According to Weseman, the only discussions she has ever had with Boydstun regarding safety issues of trailer skids occurred before she signed her confidentiality agreement with Boydstun and, as such, she is willing to fully testify to these matters. Weseman only invokes her statutory confidentiality obligation with respect to her work for Boydstun after April 23, 2005; none of this work, Weseman states, has any bearing on her expert opinion in this case.

## II. ANALYSIS

The Federal Rules of Civil Procedure require parties retaining expert witnesses to disclose the expert's identity and provide a written report prepared and signed by the witness. **FED. R. CIV. P. 26(a)(2)(B)**. The Advisory Committee Notes state that under the Rule, "litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."

Further, federal courts have the inherent power to disqualify an expert witness from participating in litigation. ***Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996)**. In the context of pretrial discovery, such power has persuasively been invoked to promote the policy of "effective cross-examination of expert witnesses, which is essential to 'the integrity of the truth finding process' because 'useful cross-examination and possible impeachment can only be accomplished by gaining access to all of the information that shaped or potentially influenced the expert witness's opinion.'" ***Musselman v. Phillips*, 176 F.R.D. 194, 198 (D. Md. 1997) (citation omitted)**. Other courts have disqualified expert witnesses who refuse to disclose the nature of material relied upon under basic notions of fairness, reasoning that the expert ought not be permitted to use privilege "as both a sword and a shield," preventing the opponent from exploring his opinion during deposition but offering the opinion against the opponent at trial. ***Engineered Prods. Co. v. Donaldson Co., Inc.*, 313 F.Supp.**

**2d 951, 1022 (N.D. Iowa 2004)**.  Thus, the Court is persuaded that if Weseman relied on her confidential conversations or other dealings with Boydstun in forming any conclusions or opinions relevant to her testimony in this matter, or if there is any ambiguity as to whether Weseman so relied on these confidential matters, such information must either be disclosed to Cottrell or Weseman may not testify.  ***See, e.g., Monsanto Co. v. Aventis Cropscience, N.V.*, 214 F.R.D. 545, 547 (E.D. Mo. 2002)("When, however, the subject matter of those materials relates to the facts and opinions the expert expressed in his report, the courts should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion")**.

To compel or bar testimony under these circumstances, two conditions must be present: (1) evidence exists that is clearly relevant to the expert's testimony; and (2) the expert withholds such evidence.  In this case, there are two relevant time periods: before Weseman signed her confidentiality agreement with Boydstun on April, 23, 2005, and after she signed the agreement.  However, based on the information presently available, the Court finds Weseman clearly did not rely on or consider her privileged communication with Boydstun in forming her expert opinions.  Thus, Weseman's testimony will not be barred.

With regard to the first time period, before Weseman signed the confidentiality agreement, the Court finds Weseman's communication with Boydstun to be relevant; she relied on such communication when forming her expert opinions.  However, Weseman did not withhold the content of this communication.  To the

contrary, Weseman indicated she is willing to disclose the content of her communication with Boydstun during this first time period, as reflected in her deposition:

> Q: All right. Can you tell me what consulting work you did related to skids before April 23rd of 2005?
>
> A: Yes, I can.
>
> Q: Okay, please.
>
> A: To the best of my recollection.
>
> Q: Now, first of all, is this because you have permission from [Boydstun] to do this or because you believe you're free to discuss it?
>
> A: I believe I'm free to discuss it.
>
> Q: Okay.
>
> A: There was no confidentiality agreement prior to 2005.

(Doc. 75, Ex. K - Weseman depo., *Eubanks v. Cottrell*, Case No. 05-cv-1361 (E.D. Mo. Sept. 22, 2006).

With respect to the time period after April 23, 2005, Weseman invokes her privilege to withhold her communications with Boydstun, but she has unambiguously stated under oath that her expert opinions do not rely on her work for Boydstun during this time in any way. In her affidavit dated September 13, 2006, Weseman states, "I have never spoken with nor have I corresponded with Boydstun Metal Works, Inc., subsequent to the execution of the consultation contract with respect to design safety issues involving rear loading skids on Boydstun trailers. Any and all such discussions occurred prior to the signing of such contract" (Doc. 75, Ex.

I). Weseman further stated that her "reference to discussions with Boydstun Metal Works, Inc., in the expert report in the Gray and Eubanks matters was a reference to discussions prior to the execution of the above contract as I so testified in my deposition in the Gray case" (*Id.*)  Finally, in Weseman's deposition in a related action against Cottrell, she stated unequivocally, "I've done no skid work for Mr. Boydstun since signing that contract. [Post-contract work] has no bearing on this case." (Doc. 75, Ex. J - Weseman depo., *Gray v. Cottrell*, Case No. 05-cv-1852 (E.D. Mo. July 11, 2006).

In summary, Weseman's pre-contract communications with Boydstun are relevant, but they are not being withheld; her post-contract communications with Boydstun are being withheld under privilege, but they are not relevant, including her advice to her client, Boydstun, on car transportation matters.  Based on all information currently before this Court, there is no reason to believe that an iota of relevant evidence is being withheld from Cottrell based on Weseman's invocation of the privilege.  As such, this Court refuses to disqualify Weseman as an expert witness.  The Court's conclusion is bolstered by the facts that disqualification of an expert witness is rare, **Grioli v. Delta Int'l Mach. Corp., 395 F. Supp. 2d 11, 13 (E.D.N.Y. 2005)**, and that replacing an expert witness may be very difficult and costly.  **Chamberlain Group, Inc. v. Interlogix, Inc., Case No. 01-c-6157, 2002 U.S. Dist. LEXIS 6998 at \*7, 2002 WL 653893 at \*3 (N.D. Ill. Apr. 19, 2002) (Disqualification of experts is a "drastic measure which courts should hesitate to impose except when absolutely necessary.")(quoting** *Owen v. Wangerin*, **985**

**F.2d 312, 317 (7th Cir. 1993))**.[1]

### III. CONCLUSION

Based on the record and case law, this Court **DENIES** Defendant Cottrell's Motion to Bar Expert Linda Weseman From Testifying (Doc. 73).

**IT IS SO ORDERED.**

Signed this 3rd day of August, 2007.

/s/     David   RHerndon
**United States District Judge**

---

[1] The Seventh Circuit's discussion in ***Owen v. Wangerlin*** was directed toward attorney disqualification, not expert disqualification, but this Court, like the ***Chamberlain*** court, finds the rationale equally compelling in the expert witness context.